## GLENN BERRYHILL v. STATE.

No. A-7655.   June 12, 1931.
Rehearing Denied Oct. 10, 1931.
(3 Pac. [2d] 456.)

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

EDWARDS, J.   The plaintiff in error, hereinafter called defendant, was convicted of operating a confidence game, and his punishment fixed at a fine of $2,500.

The information charges the offense defined by section 1924, C. O. S. 1921.   In substance it is alleged that defendant with one Forrest D. Jackson, Carl Stanley, and Joe Baker, by a fraudulent swindle and confidence game, defrauded one James J. Lindley out of the sum of $10,000.   The facts shown by the record demonstrate the truth of the old adage that "truth is stranger than fiction,"

and further suggests that of the fool and his money. Briefly stated, the proof is that Lindley, the person defrauded, lived in Nevada, Mo., was a director in the bank, and had a good financial standing. He had known defendant for a number of years and had great confidence in him. They had followed the "dog races" together and had played golf together. We are supposed to take judicial notice that a golfer will not cheat a fellow golfer except possibly to forget a stroke in the rough now and then. Under the record, defendant did not live up to the ethics of the game. In August, 1928, defendant came to Lindley's office; told him in substance that he was with a rich Indian by the name of Sims, who was worth a lot of money and was running through with it, and suggested they ought to get some of it. That if they could get Sims into a card game, he would tip Sims' hand and they would defraud him out of some of the money. The "rich Indian" introduced as Sims was in fact Jackson, jointly charged in the case. Lindley adopted defendant's suggestion and got into a game of poker with Jackson, alias Sims; but apparently defendant or Lindley got mixed in their tipping signals and Lindley lost $4,000. He still retained confidence in defendant, who then told him if he would go to Tulsa with them he would get a poker player who would win back this $4,000 and some more money. So defendant, Lindley, and Jackson, alias Sims, went to Tulsa together. There defendant introduced Lindley to one Carl Stanley under the name of Wright. They arranged a poker game with Jackson, alias Sims, for the next day, and secured Stanley, alias Wright, to play for Lindley. The play began and continued until it got to where it took $10,000 for Stanley, alias Wright, to call the hand of Jackson, alias Sims. Lindley was assured by defendant and Stanley, alias Wright, that they had

seen the other hand and that they held the best hand. It was agreed that the hands would be sealed and Lindley given an opportunity to get the necessary $10,000 to call Jackson, alias Sims. The hands were sealed and Lindley had the bank at Nevada wire him $10,000. The bank telegraphed the money to the Western Union, but also notified the police of Tulsa that the affair looked shady. The chief of detectives detailed some men to investigate and to warn Lindley. Lindley's confidence in defendant remained steadfast. He got a draft and with the poker hand of Stanley, alias Wright, in his pocket put up quite a search for defendant, Jackson, alias Sims, and Stanley, alias Wright, who had scattered because of fear of the police. To make a long story short the parties, except defendant, finally got together at a hotel at Claremore. Lindley, after some difficulty, got his draft cashed, went to the hotel where Jackson, alias Sims, the rich Indian, was playing a game with Stanley, alias Wright; he put his money on the table and informed them there was his $10,000. Soon they arose and Jackson said, "My hand is the best," seized the $10,000, and he and Stanley left with it. The gullible Lindley then departed, sadder but wiser, with his confidence in defendant at last shaken. Defendant did not testify.

Some five assignments of error are argued, but all are based on the claimed insufficiency of the evidence on the theory that Lindley was an accomplice and that there is not sufficient corroboration of his testimony. If Lindley were an accomplice, the contention would have much force, but to say he was an accomplice would be saying that a person can be an accomplice in a scheme to defraud himself. It often happens in this class of cases that a dupe is made to believe he is to assist in duping some one else and by some fraudulent scheme get some easy money.

The fact that the person defrauded does not come into the transaction with clean hands and good motives does not excuse the real offender by whom he is duped and defrauded. The real offenders here are not to be exonerated because Lindley was willing to go into a crooked transaction. By so agreeing he did not become an accomplice in the transaction in which he was fleeced. Since Lindley was not an accomplice, it was not necessary that his testimony be corroborated as required by section 2701, C. O. S. 1921.

It is further argued that the court erred in instruction number 7-A, which is:

"You are instructed that a conviction for the violation of any of the provisions of the statutes with reference to gambling, may be had upon the unsupported evidence of an accomplice or participant, and such accomplice or participant shall be exempt from prosecution for any offense defined in said gambling statutes about which he may be required to testify.

"You are further instructed that any person charged with a violation of any provision of the statute relating to gambling may be convicted on the uncorroborated testimony of an accomplice, and the judgment thereon shall not be set aside or reversed by reason of the fact that such conviction was based on the testimony of an accomplice."

Defendant's counsel contend that the giving of this instruction is fundamental error, being based on section 1937, C. O. S. 1921, which section applies to the gambling statutes but has no application to the law against operating a confidence game, section 1924, C. O. S. 1921, under which this prosecution is made, as the latter section is not a gambling statute. But as just stated, Lindley was not an accomplice and it was not necessary that his evidence be corroborated. The fact that the court indi-

cated by this instruction that Lindley might be an accomplice could not have been prejudicial. It may even be considered favorable to defendant, since it suggests to the jury Lindley's unfavorable connection with the transaction. We see no reason for interfering with the judgment of the court.

The case is affirmed.

DAVENPORT, P. J., and CHAPPELL, J., concur.